# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005, | ) ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 25-cv-2390 |
| U.S. DEPARTMENT OF HOMELAND<br>SECURITY,<br>245 Murray Lane SW<br>Washington, DC 20528, | ) ) ) ) ) | |
| U.S. CUSTOMS AND BORDER<br>PROTECTION,<br>1300 Pennsylvania Avenue NW<br>Washington, DC 20229, | ) ) ) ) ) | |
| U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT,<br>500 12th Street SW<br>Washington, DC 20536, | ) ) ) ) ) | |
| and | ) ) | |
| U.S. CITIZENSHIP AND IMMIGRATION<br>SERVICES,<br>P.O. Box 648010<br>Lee's Summit, MO 64064, | ) ) ) ) ) | |
| *Defendants.* | ) ) | |

## COMPLAINT

1.     As the Trump Administration seeks to carry out its mass-deportation agenda through increasingly extreme measures, American Oversight brings this action to seek information about the Trump Administration's activation of a rarely used, 1940s-era wartime law that carries

enormous potential for abuse of civil rights.

2.     On his first day in office, President Trump signed Executive Order 14159 ("EO 14159), titled "Protecting the American People Against Invasion," directing the Secretary of Homeland Security to "[e]nsure that all previously unregistered [noncitizens],"[1] comply with certain requirements originally enacted in the Alien Registration Act of 1940 ("ARA"), also known as the Smith Act.[2] *See* Pub. L. No. 76–670, 54 Stat. 670; 8 U.S.C. § 1302 (the "Registration Provision").

3.     The ARA gained notoriety in the 1940s, when the U.S. government forced millions of noncitizens to register under the Registration Provision.[3] Ultimately, millions of Japanese Americans were forced into internment camps during World War II, facilitated in part by the registration of Japanese noncitizens pursuant to the ARA.[4] Since then, the Registration Provision of the ARA largely has not been enforced, possibly because of the backlash as a result of its use during World War II.

---

[1] "Noncitizen" is used in place of the equivalent term "alien," unless clarity demands otherwise. *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (Kavanaugh, J.).

[2] Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02006.pdf.

[3] *See* Cherstin M. Lyon, *Smith Act*, Densho Encyclopedia, https://encyclopedia.densho.org/Smith%20Act/?_gl=1*w3o2uu*_gcl_au*OTY1MTk4NjUzLjE3NTI4NTQ0ODU (last accessed July 18, 2025) ("Each immigrant was assigned an Alien Registration Number and given an Alien Registration Receipt Card that they were required to carry at all times."); *see also Alien Total So Far Is Put at 4,741,971; Figure Is Far in Excess of Early Estimate, Says Harrison*, N.Y. Times, Jan. 13, 1941, *available at* https://www.nytimes.com/1941/01/13/archives/alien-total-so-far-is-put-at-4741971-figure-is-far-in-excess-of.html.

[4] The Alien Enemies Act, 50 U.S.C.§§ 21-24, was used as a separate basis to require the registration of Japanese noncitizens. *See* Proclamation No. 2537 (Jan. 14, 1942), *available at* https://www.presidency.ucsb.edu/documents/proclamation-2537-regulations-pertaining-alien-enemies. The Executive Order authorizing internment of Japanese noncitizens and Japanese-Americans alike followed one month later. *See* Exec. Order No. 9066, 7 Fed. Reg. 1407 (Feb. 19, 1942), https://archives.federalregister.gov/issue_slice/1942/2/25/1407-1409.pdf.

4.      On March 12, 2025, the Department of Homeland Security ("DHS") and the U.S. Citizenship and Immigration Services ("USCIS") published an interim final rule in response to EO 14159, setting forth how they would require noncitizens to comply with the Registration Provision. *See* 90 Fed. Reg. 11,793 (Mar. 12, 2025). The agencies explained that because the goal of the EO was to "receiv[e] more comprehensive information about the location of [noncitizens] in the United States, the rule [would] make it easier and safer for DHS to enforce the law." *Id.* at 11797.

5.      That is just a smokescreen, however. The policy is one "aimed at scaring people and facilitating immigration raids."[5]

6.      On April 11, 2025, the interim final rule became effective, allowing DHS and USCIS to move forward with implementing their new regulatory requirements under the Registration Provision. Specifically, that day, USCIS issued a new form, G-325R, requiring that "all [noncitizens] 14 years of age or older who were not registered and fingerprinted (if required) when applying for a U.S. visa and who remain in the United States for 30 days or longer" must register. The agency's webpage warned noncitizens that those who "do not comply with the [Alien Registration Requirement] may face criminal penalties."[6]

7.      DHS's new regulations set forth that unregistered noncitizens must file a form G-325R either online or on paper with USCIS. USCIS will then send noncitizens instructions to appear at an Application Support Center ("ASC") to be fingerprinted.

8.      ASCs are secure facilities where officials from USCIS and ICE can question, arrest,

---

[5] Simón Rios, *Immigrant Registry Alarms Those Without Legal Status*, WBUR (Feb. 28, 2025), https://www.wbur.org/news/2025/02/28/immigrant-registry-alarms-legal-status-trump; *see also* Cassidy Jensen, *Trump Immigrant Registration Plan Is a Scare Tactic, Law Experts Say*, Documented (Mar. 6, 2025), https://documentedny.com/2025/03/06/trump-undocumented-immigrant-alien-registration/.
[6] *See* Alien Registration Requirement, USCIS, https://www.uscis.gov/alienregistration (last accessed July 18, 2025).

and detain noncitizens.

9.     Over the last six months, in pursuit of the Administration's aggressive mass deportation goals, DHS has begun rounding up individuals—many of whom have no history of violence or criminal records[7]—at USCIS field offices, lobbies of immigration courtrooms, and Alternative to Detentions check-ins, to question, detain, and eventually deport them.[8]

10.     DHS's exploitation of noncitizens' efforts to comply with immigration laws by appearing at these locations belies the Administration's claims that their mass deportation agenda focuses on dangerous criminals and ensuring public safety.[9]

11.     The Administration's invocation of the Registration Provision appears to be similarly pretextual, serving only to deport as many noncitizens as possible.

12.     Plaintiff American Oversight has submitted multiple requests to federal immigration agencies under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to shed light on the Administration's actions in implementing EO 14159, including the potential effects

---

[7] *See, e.g.*, Melissa Goldin, *Trump Says He Wants to Deport 'the Worst of the Worst.' Government Data Tells Another Story*, Assoc. Press (updated July 12, 2025 12:18 PM), https://apnews.com/article/fact-check-trump-immigration-crime-ice-criminal-dangerous-violent-99557d9d68642004193a9f4b7668162e; Melissa Montalvo, *California ICE Detention Facility Fills Up with People Who Have No Criminal History*, Fresno Bee (updated July 16, 2025 12:03 PM), https://www.fresnobee.com/news/local/article310420760.html; Emmanuel Martinez et al., *ICE Increasingly Targets Undocumented Migrants with No Criminal Record*, Wash. Post (July 3, 2025), https://www.washingtonpost.com/immigration/2025/07/03/ice-arrests-migrants-criminal-record-numbers/.

[8] *See, e.g.*, Ximena Bustillo, *ICE's Novel Strategy Allows for More Arrests from Inside Immigration Courts*, NPR (updated June 12, 2025 5:02 AM), https://www.npr.org/2025/06/12/nx-s1-5409403/trump-immigration-courts-arrests; Nina Shapiro, *As Pushback Grows to WA Immigration Court Arrests, ICE Changes Tactics*, Seattle Times (June 24, 2025 6:00 AM), https://www.seattletimes.com/seattle-news/as-pushback-grows-to-wa-immigration-court-arrests-ice-changes-tactics/; Patricia Ortiz, *Immigrants Warned to Bring a Lawyer to Their USCIS Appointments*, Enlace Latino NC (Mar. 24, 2025), https://enlacelatinonc.org/en/Immigrants-warned-to-bring-a-lawyer-to-their-USCIS-appointments-after-arrest-at-Miami-offices/.

[9] *See* sources cited *supra* note 7.

on immigrant communities across the country, and how the Registration Provision might factor
into its drastic escalation in immigration enforcement.

13.    Having received no records or determinations in response to its FOIA requests,
American Oversight now brings this action against DHS, U.S. Customs and Border Protection,
U.S. Immigration and Customs Enforcement, and USCIS under FOIA, and the Declaratory
Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel
compliance with the requirements of FOIA.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and
28 U.S.C. §§ 1331, 2201, and 2202.

15.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.
§ 1391(e)(1).

16.    Because Defendants have failed to comply with the applicable time-limit provisions
of FOIA, American Oversight is deemed to have exhausted its administrative remedies pursuant
to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendants from
continuing to withhold department or agency records and ordering the production of department
or agency records improperly withheld.

## PARTIES

17.    Plaintiff American Oversight is a nonpartisan, non-profit section 501(c)(3)
organization primarily engaged in disseminating information to the public. American Oversight is
committed to promoting transparency in government, educating the public about government
activities, and ensuring the accountability of government officials. Through research and FOIA
requests, American Oversight uses the information gathered, and its analysis of it, to educate the

public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia.

18.    Defendant U.S. Department of Homeland Security ("DHS") is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). The DHS Privacy Office coordinates FOIA requests for several DHS components, including the Office of the Secretary and Deputy Secretary, the Office of the Executive Secretary, the Office of Intergovernmental Affairs, the Management Directorate, the Office of Policy, the Office of Legislative Affairs, and the Office of Public Affairs. DHS has possession, custody, and control of records that American Oversight seeks.

19.    Defendant U.S. Customs and Border Protection ("CBP") is a component of DHS, headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). CBP has possession, custody, and control of records that American Oversight seeks.

20.    Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of DHS, headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). ICE has possession, custody, and control of records that American Oversight seeks.

21.    Defendant U.S. Citizenship and Immigration Services ("USCIS") is a component of DHS, headquartered in Camp Springs, MD, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). USCIS has possession, custody, and control of records that American Oversight seeks.

## STATEMENT OF FACTS

22.     In February and early April 2025, American Oversight submitted multiple FOIA requests to DHS, CBP, ICE, and USCIS seeking various categories of records with the potential to shed light on the Administration's plans to require undocumented immigrants to register their presence in the United States with government authorities.

*DHS EO 14159 Request*

23.     On February 18, 2025, American Oversight submitted a FOIA request to DHS (internal tracking number DHS-25-0411) seeking email communications of six senior DHS officials containing certain key terms related generally to noncitizen registration requirements, as well as guidance, reports, and analyses stemming from EO 14159, from January 20, 2025, through the date the search was conducted. A true and correct copy of that request is attached as Exhibit A.

24.     On February 21, 2025, DHS acknowledged receipt of the request, assigned the request tracking number 2025-HQFO-02507, and stated that DHS would invoke a 10-day extension for its response to the request.

25.     As of the date of this filing, American Oversight has received no further communication from DHS regarding this FOIA request.

*CBP EO 14159 Request*

26.     On February 18, 2025, American Oversight submitted a FOIA request to CBP (internal tracking number DHS-CBP-25-0413) seeking directives, guidance, reports, and analyses stemming from EO 14159, from January 20, 2025, through the date the search was conducted. A true and correct copy of that request is attached as Exhibit B.

27.     On February 19, 2025, CBP acknowledged receipt of the request, assigned the request tracking number CBP-FO-2025-068461, and stated that CBP would invoke a 10-day

extension for its response to the request.

28.     As of the date of this filing, American Oversight has received no further communication from CBP regarding this FOIA request.

*DHS Registration Provision Request*

29.     On April 7, 2025, American Oversight submitted a FOIA request to DHS (internal tracking number DHS-25-0957) seeking email communications of ten senior DHS officials containing certain key terms related to noncitizen registration requirements, as well as guidance, reports, and analyses regarding registration requirements under the Registration Provision. A true and correct copy of that request is attached as Exhibit C.

30.     On April 10, 2025, DHS acknowledged receipt of the request, assigned the request tracking number 2025-HQFO-03384, and stated that DHS would invoke a 10-day extension for its response to the request.

31.     As of the date of this filing, American Oversight has received no further communication from DHS regarding this FOIA request.

*ICE Registration Provision Request*

32.     On April 7, 2025, American Oversight submitted a FOIA request to ICE (internal tracking number ICE-25-0959) seeking guidance, recommendations, and directives created by or in the possession of ICE regarding registration requirements under the Registration Provision, from February 25, 2025, through the date the search was conducted. A true and correct copy of that request is attached as Exhibit D.

33.     On April 10, 2025, DHS acknowledged receipt of the request, assigned the request tracking number 2025-ICFO-30241, and stated that ICE would invoke a 10-day extension for its response to the request.

34.     As of the date of this filing, American Oversight has received no further communication from ICE regarding this FOIA request.

*USCIS Registration Provision Request*

35.     On April 7, 2025, American Oversight submitted a FOIA request to USCIS (internal tracking number USCIS-25-0958), seeking guidance, recommendations, and directives created by or in the possession of USCIS regarding registration requirements under the Registration Provision, from February 25, 2025, through the date the search was conducted. A true and correct copy of that request is attached as Exhibit E.

36.     On April 10, 2025, USCIS acknowledged receipt of the request, assigned the request tracking number COW2025002478, and stated that USCIS would invoke a 10-day extension for its response to the request.

37.     As of the date of this filing, American Oversight has received no further communication from USCIS regarding this FOIA request.

*Exhaustion of Administrative Remedies*

38.     As of the date of this Complaint, Defendants have failed to (a) notify American Oversight of final determinations regarding American Oversight's FOIA requests, including the scope of responsive records Defendants intend to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

39.     Through Defendants' failure to respond to American Oversight's FOIA requests within the time period required by law, American Oversight has constructively exhausted its administrative remedies and seeks immediate judicial review.

## COUNT I

### Violation of FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Searches for Responsive Records

40.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

41.    American Oversight properly requested records within the possession, custody, and control of Defendants.

42.    Defendants are agencies subject to FOIA, and they must therefore make reasonable efforts to search for requested records.

43.    Defendants have failed to promptly review agency records for the purpose of locating those records that are responsive to the American Oversight's FOIA requests.

44.    Defendants' failures to conduct adequate searches for responsive records violate FOIA and applicable regulations.

45.    Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to American Oversight's FOIA requests.

## COUNT II

### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

46.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

47.    American Oversight properly requested records within the possession, custody, and control of Defendants.

48.    Defendants are agencies subject to FOIA and must therefore release in response to

10

FOIA requests any non-exempt records and provide lawful reasons for withholding any materials.

49.     Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to American Oversight's FOIA requests.

50.     Defendants' failures to provide all non-exempt responsive records violate FOIA and applicable regulations.

51.     Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to American Oversight's FOIA requests and provide indexes justifying withholdings of any responsive records withheld under claims of exemption.

### **REQUESTED RELIEF**

WHEREFORE, American Oversight respectfully requests the Court to:

a) Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to American Oversight's FOIA requests;

b) Order Defendants to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to American Oversight's FOIA requests and indexes justifying the withholding of any responsive records withheld under claim of exemption;

c) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA requests;

d) Award American Oversight the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

e)  Grant American Oversight such other relief as the Court deems just and proper.


Dated: July 24, 2025                          Respectfully submitted,

                                              */s/ Daniel Martinez*
                                              Daniel Martinez
                                              D.C. Bar No. 90025922
                                              Loree Stark
                                              D.C. Bar No. 90020649
                                              AMERICAN OVERSIGHT
                                              1030 15th Street NW, B255
                                              Washington, DC 20005
                                              (202) 897-2465
                                              danny.martinez@americanoversight.org
                                              loree.stark@americanoversight.org

                                              *Counsel for Plaintiff*